IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv412

| | |
|---|---|
| JULIE E. GRIFFIN, ) | |
| ) | |
| Plaintiff, pro se, ) | |
| ) | |
| Vs. ) | |
| ) | **MEMORANDUM OF** |
| SOUTH PIEDMONT COMMUNITY ) | **DECISION AND ORDER** |
| COLLEGE, SUSAN FLAKE, ) | |
| ELAINE CLODFELTER, JOHN ) | |
| RATLIFF, JOHN MCKAY, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This is an employment discrimination action in which plaintiff has sued her former employer and several former co-workers, alleging claims for sex discrimination, sexual harassment/hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as well as a state law claim for defamation. This matter is before the court on defendants' motion for summary judgment [docket no. #25].

I.   Background

Plaintiff filed a complaint in this court on August 30, 2010, and an amended complaint on September 15, 2010. On April 15, 2011, defendants filed a partial motion to dismiss for failure to state a Title VII claim against the individual defendants, failure to state a claim for sexual harassment/hostile work environment, failure to state a claim for gender

1

discrimination and retaliation in violation of Title VII, and failure to state a claim for defamation. On May 10, 2011, the court issued an Order to Show Cause, requiring plaintiff to respond to defendants' motion to dismiss by June 15, 2011. On June 1, 2011, defendants filed the pending motion for summary judgment. Plaintiff has filed a response in opposition to the motion for summary judgment, and the matter is ripe for disposition. Furthermore, a hearing was held on defendants' motion for summary judgment on August 17, 2011.

**II. Facts**

Pro se plaintiff Julie E. Griffin, a white female, began working for defendant South Piedmont Community College ("SPCC") as a Financial Aid Technician on July 1, 2005. (Am. Compl. ¶ 23.) In her amended complaint, plaintiff alleges that she received excellent employee reviews and was praised for excellent work until she made a complaint against her supervisor John Ratliff on or around November 4, 2009. (*Id*. ¶ 24.) Ratliff's predecessor, Vickie Cameron, wrote a letter of recommendation for plaintiff dated October 9, 2009. (*Id*. ¶ 25.) On October 1, 2009, defendant John Ratliff became the Interim Financial Aid Director and was plaintiff's immediate supervisor. (Ratliff Aff. ¶ 4.) According to Ratliff, during his time as plaintiff's supervisor, plaintiff was reluctant to provide explanations and instructions on different tasks within the department and resisted change. (*Id*. ¶ 5.) Ratliff further contends that plaintiff often failed to comply with project requests and instructions. (*Id*.)

During the course of Ratliff's tenure, Ratliff acted in certain ways that plaintiff interpreted as sexual harassment. For instance, Ratliff sometimes winked at plaintiff in a manner that plaintiff interpreted as sexually suggestive. On one occasion, Ratliff pulled a

chair up behind plaintiff very close to plaintiff as she worked on her computer, making plaintiff feel "trapped." On or around November 5, 2010, plaintiff reported to the SPCC Director of Human Resources Susan Flake that she believed that Ratliff had sexually harassed her by stating, "[u]ndoubtedly, you have never had a man for a boss." (Flake Aff. ¶ 5; Am. Compl. ¶ 36.) Flake told plaintiff that if she wished to make a complaint against Ratliff, she needed to submit her complaint in writing. (Flake Aff. ¶ 7.) Flake never received a written complaint from plaintiff. (*Id*.) According to plaintiff, the harassment by Ratliff continued. Plaintiff contends that she subsequently reported the harassment to SPCC Vice President for Student Success Elaine Clodfelter, who told plaintiff that she did not believe that Ratliff's conduct constituted sexual harassment. (Am. Compl. ¶ 37.) Plaintiff does not give a specific date for when she talked to Clodfelter, but she contends that she complained about Ratliff's behavior ten weeks before she was fired.

On or about January 6, 2010, plaintiff adjusted her own financial aid account in order to receive financial aid funds for which she was not eligible. (Ratliff Aff. ¶ 14; Am. Compl. ¶ 45.) On January 13, 2010, plaintiff's employment was terminated for cause. (Am. Compl. ¶ 46.) At the termination meeting, plaintiff was told she was being terminated for manipulating the system to receive financial aid funds for which she was not eligible and for refusal to complete and perform duties assigned by her supervisor defendant Ratliff. (Flake Aff. ¶ 9.) During the meeting, plaintiff apologized for adjusting her own account. (Clodfelter Aff. ¶ 10; Ratliff Aff. ¶ 18.)

On January 26, 2010, plaintiff filed EEOC charges against defendant SPCC. (Am.

Compl. ¶ 52.) On February 16, 2010, defendant Flake submitted a statement to the North Carolina Employment Security Commission ("ESC"), stating that plaintiff had been fired for cause because she admitted that she attempted to manipulate the financial aid system to receive funds for which she was not eligible. (*Id.* ¶ 55.)

### III. Standard of Review on Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a factfinder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913;

*Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**IV.    Analysis**

**1.    Plaintiff's Title VII Claims Against the Individual Defendants**

The court first notes that plaintiff's Title VII claims against the individual defendants Ratliff, Flake, Clodfelter, and McKay must be dismissed because it is well settled that individuals cannot be held liable under Title VII. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Thus, summary judgment will be granted as to these defendants as to plaintiff's Title VII claim against them.

**2.    Plaintiff's Title VII Claim for Gender Discrimination Against SPCC**

Title VII makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). To satisfy ordinary principles of proof in discrimination cases, a plaintiff must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this burden-shifting structure, known as the "McDonnell Douglas" framework, the plaintiff must plead facts sufficient to create an inference that an adverse

5

employment decision was based on impermissible considerations. In an employment discrimination case based on termination, this may be done by showing that (1) the plaintiff is a member of a protected class; (2) the plaintiff was terminated; (3) at the time of the termination the employee was meeting her employer's legitimate expectations; and (4) the action took place under conditions establishing an inference of discrimination. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802. If the employer demonstrates a legitimate, nondiscriminatory reason, the presumption of unlawful discrimination created by the prima facie case "drops out of the picture," and the burden shifts back to the employee to show that the given reason was merely a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995). The responsibility of proving that "the protected trait . . . actually motivated the employer's decision" remains with the plaintiff at all times. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. *Goldberg*, 836 F.2d at 848. With these principles in mind, the court now turns to plaintiff's gender discrimination claim. Because plaintiff has failed to provide any direct evidence of gender discrimination, the court must apply the burden-

6

shifting framework of *McDonnell Douglas*.

The court finds that summary judgment should be granted to defendant SPCC as to plaintiff's gender discrimination claim because, even if plaintiff could meet her prima facie case, defendant has articulated a legitimate, non-discriminatory reason for firing plaintiff. That is, it is undisputed that plaintiff altered her financial account so that she could receive financial aid that she would otherwise not be entitled to receive. Plaintiff has admitted that she did this. At the hearing held before the court on August 17, 2011, plaintiff essentially argued to the court that altering her financial aid account was not so egregious that it justified defendant taking the drastic action of firing her. In a discrimination claim under Title VII, however, the court is not entitled to review the wisdom of a defendant's decision, as long as the decision to fire plaintiff was based on a legitimate, non-discriminatory reason. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992). In other words, the court may not "sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

Furthermore, plaintiff has wholly failed to present any evidence showing that defendant's stated reason for firing plaintiff was pretextual. Therefore, defendant SPCC is entitled to summary judgment on plaintiff's claim for Title VII gender discrimination.

3. **Plaintiff's Claim of Sexual Harassment/Hostile Work Environment Against SPCC**

Next, plaintiff alleges that during her employment she was subjected to sexual

harassment and a hostile work environment in violation of Title VII. Specifically, she contends that her immediate supervisor defendant John Ratliff sexually harassed her during her employment with defendant SPCC. To prevail on a hostile workplace claim, a plaintiff must show that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir. 2001).

Title VII does not protect against all unwanted workplace distractions, and behavior such as "simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Rather, a plaintiff must show that the harassment was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive. *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir. 2000). In determining whether the work environment was abusive, courts consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003).

In support of her claim for sexual harassment/hostile work environment, plaintiff contends that the following occurred with her supervisor Ratliff: Ratliff barged into her office and interrupted her work, throwing out documents and rearranging items (Am. Compl. ¶ 28); several times a week Ratliff would tell her to stop what she was doing and ask her to train him on a piece of software (*id*. ¶ 29); Ratliff confused plaintiff by changing instructions arbitrarily (*id*. ¶ 30); Ratliff winked "suggestively" at plaintiff and, on one occasion, walked into plaintiff's office and placed a chair behind her to view her computer screen, making her feel "trapped" (*id*. ¶ 31); Ratliff made derogatory comments about plaintiff's work product and her necessity at the office (*id*. ¶ 32); on November 3, 2009, while plaintiff and a co-worker were discussing work issues, Ratliff walked into plaintiff's office abruptly and accosted plaintiff for not following his instructions (*id*. ¶ 33); on November 4, 2009, Ratliff apologized for his harshness and stated, "Well, I'm not another Vickie [Cameron, Ratliff's female predecessor]. I'm not going to just sit over there and let the boat float. I'm a man. You've never worked for a man before." (*id*. ¶ 35); Ratliff stated "to hell with them" while discussing a student's financial aid and plaintiff interpreted this as a flirtatious remark (*id*. ¶ 38); Ratliff raised his hand up and shook his head, indicating that plaintiff was not to speak during a conference call (*id*. ¶ 40); and Ratliff asked plaintiff questions about her job and how different processes worked (*id*. ¶ 42).

Plaintiff's claim for sexual harassment will be dismissed because plaintiff's allegations do not rise to the level of severe and pervasive conduct sufficient to support her claim of a hostile work environment under Title VII. Most of Plaintiff's grievances are not

9

gender-related but, instead, are overwhelmingly complaints and grievances over personality conflicts between herself and Ratliff. Plaintiff only alleges one statement by Ratliff from which an inference could be made that Ratliff held some animus towards women. Ratliff said, "I'm a man. You've never worked for a man before." The rest of plaintiff's allegations regarding Ratliff, however, all relate simply to the fact that plaintiff believes that Ratliff was an overbearing, over-critical, difficult person to work with.

Furthermore, as to Ratliff's alleged sexually suggestive "wink," plaintiff stated in her deposition that it happened four or five times, but she was unable to explain or describe when, where, or the circumstances under which the winking occurred. (Pl.'s Dep. 33:3-37:2.) As for the incident in which plaintiff allegedly felt "trapped," plaintiff admitted that Ratliff did not touch her or make suggestive remarks. (Pl.'s Dep. 38:5-39:25.) Furthermore, plaintiff did not tell Ratliff or anyone else at the college that the "winking" incidents made her feel uncomfortable. (Pl.'s Dep. 39:4-6.) Plaintiff has simply not shown that the alleged sexual harassment by Ratliff was sufficiently "severe or pervasive" to withstand the motion for summary judgment.

In sum, defendant SPCC is entitled to summary judgment as to plaintiff's Title VII claim alleging sexual harassment/hostile work environment.

### 4. Plaintiff's Claim for Retaliation Against SPCC

To prove a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity under Title VII; (2) her employer took materially adverse action against her such that it could dissuade a reasonable worker from making or

supporting a charge of discrimination or from otherwise engaging in another form of protected activity; and (3) a causal relationship existed between the protected activity and the materially adverse activity. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

In support of her claim for retaliation, plaintiff first contends that defendant fired her for complaining about sexual harassment by Ratliff. Plaintiff has failed to establish a claim of Title VII retaliation, however, because plaintiff has not shown the requisite causal connection between her complaints about Ratliff and her termination. The evidence shows plaintiff complained to Flake and Clodfelter about Ratliff's actions around ten weeks before she was fired. By contrast, plaintiff altered her financial aid account just days before she was fired. The evidence shows that as soon as defendants discovered that plaintiff had altered her financial aid account, the decision was made to fire her. In sum, plaintiff fails to present any evidence supporting her assertion that defendant SPCC's decision to terminate her employment was based on anything other than Plaintiff's personal account adjustment and her history of poor performance while working under Ratliff's supervision.[1] Defendant SPCC is entitled to summary judgment on plaintiff's retaliation claim based on her contention that she was fired for complaining about sexual harassment.

---

[1] In response to defendant's motion for summary judgment, plaintiff contends that defendant could not have fired her for adjusting her personal account because defendant did not have a written policy regarding the prohibition of personal account adjustment by financial aid technicians. Plaintiff cites to no authority, however, stating that defendant was required to have a written policy stating that employees could not alter their financial aid accounts to receive financial aid for which they otherwise would not have been eligible to receive.

Plaintiff also contends that defendant SPCC retaliated against her for filing EEOC charges by recommending that she not receive unemployment benefits to the North Carolina Employment Security Commission ("ESC"). According to plaintiff's amended complaint, at the January 13, 2010, termination meeting, while discussing plaintiff's right to unemployment benefits, Flake said: "Put it this way, Julie. You've got two choices. You can go out of here and not cause trouble and draw [unemployment insurance], or you can go out and cause trouble and not draw." (Am. Compl. ¶ 49.)

Plaintiff filed EEOC charges against defendant SPCC on January 26, 2010. On that same day, plaintiff went to Flake's office to get copies of her personnel records. (*Id*. ¶ 52.) Flake demanded to know why plaintiff wanted her personnel record. Plaintiff responded, "I'm protecting myself." (*Id*.) Flake then said, "I feel like you're trying to stir something up here, and you agreed [the day of plaintiff's termination] that was not going to be the case and if it is I need to know because I need to call the unemployment office and tell them that you were fired." (*Id*.) Flake then asked plaintiff if she had been to the unemployment office to register for unemployment benefits. Plaintiff stated that she was not sure whether she could receive unemployment benfits. Flake said, "I told you what to do. Tell them [ESC] your contract ended." (*Id*.) Plaintiff replied, "But my contract didn't end, I was fired for cause." (*Id*.) Flake responded, "Your contract ended. Your contracted ended." (*Id*.) Flake then said, "You don't think I know what I'm doing? Do you know how many times I've done this?" (*Id*.)

On February 16, 2010, defendant Flake submitted a statement to the ESC, stating that

plaintiff had been fired for cause because she admitted that she attempted to manipulate the financial aid system to receive funds for which she was not eligible. On around April 4, 2010, plaintiff met with Flake to ask to have her job back. According to plaintiff's allegations, Flake told plaintiff "flatly that [defendant] had interfered with [plaintiff's] unemployment insurance benefits because of the charges [plaintiff] filed with the EEOC." According to plaintiff, Flake stated, "Once you made a statement to the EEOC we didn't have a choice. This is not what we wanted." (*Id.* ¶ 58.)

Based on the above-factual allegations, plaintiff contends that defendant SPCC contested plaintiff's unemployment benefits in retaliation for plaintiff filing an EEOC charge against defendant. Plaintiff's retaliation claim based on defendant's statement to the ESC cannot withstand summary judgment. Here, the alleged conversation between plaintiff and Flake suggests that Flake was initially going to be willing to state to the ESC that plaintiff's contract ended so that plaintiff could draw unemployment benefits.[2] Once plaintiff filed the EEOC charges, however, in which she attested that she had been fired, Flake then apparently determined that she had no choice but to inform the ESC that plaintiff had been fired. Here, as a matter of sound policy, an employer's lawful participation in an employee's unemployment benefit proceedings cannot be an "adverse employment action" within the meaning of a Title VII retaliation claim. In other words, employers should not have to choose between being truthful in their statements to the ESC and exposing themselves to a

---

[2] The court makes no finding as to whether Flake and plaintiff had this alleged conversation; the court merely recounts the conversation as alleged by plaintiff.

Title VII retaliation claim. *See Yanke v. Mueller Die Cut Solutions, Inc.*, Civil Action No. 3:03cv527, 2007 WL 437694, at *9 (W.D.N.C. Feb. 5, 2007) ("The Court does not consider an employer's lawful participation in an employee's worker's compensation or unemployment benefit proceeding[] as an 'adverse action' within the meaning of Title VII."); *see also Belardo v. Con-Way Transp. Servs., Inc.*, No. 02cv5406(SLT)(SMG), 2005 WL 885016, at *8 (E.D.N.Y. Mar. 28, 2005) (noting that "an employer's actions in objecting to the provision of unemployment benefits to a former employee is not an adverse employment action cognizable under the employment discrimination laws"). In sum, plaintiff cannot bring a Title VII retaliation claim based on defendant SPCC's decision to contest plaintiff's unemployment benefits.

### 5. Plaintiff's Defamation Claim Against All Defendants

To recover for defamation, a plaintiff must generally prove that the defendant made false statements of or concerning the plaintiff, which were published to a third person, causing injury to plaintiff's reputation. *See Hall v. Piedmont Publ'g Co.*, 266 S.E.2d 397, 399 (N.C. App. 1980). The term defamation includes two distinct torts, libel and slander. *See Phillips v. Winston-Salem/Forsyth County Bd. of Educ.*, 450 S.E.2d 753, 756 (N.C. App. 1994). Generally, libel is written and slander is oral. *Id.* Slander *per se* is a form of defamation in which the defendant makes a false oral communication to a third person that (1) harms the plaintiff in his trade, business, or profession; (2) conveys that the plaintiff has a loathsome disease; or (3) states that the plaintiff has committed a crime involving moral turpitude. *See id.* Libel *per se* is a publication which, when considered alone without

14

explanatory circumstances: (1) charges that the person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in their trade or profession; or (4) otherwise tends to subject a person to ridicule, contempt, or disgrace. *Id.*

In her complaint, plaintiff originally based her defamation claim on the statement that defendant SPCC made to the ESC regarding plaintiff's right to unemployment benefits. Defendant stated that it would not recommend that plaintiff receive unemployment benefits based on the fact that she altered her financial aid account. To the extent that plaintiff's defamation claim is based on a statement made to the ESC, the statement is absolutely privileged and cannot serve as the basis for plaintiff's defamation claim. *See* N.C. GEN. STAT. § 96-4(t)(5) (2009) (stating that all "letters, reports, communication, or any other matters . . . from the employer . . . to the Commission . . . shall be absolutely privileged communication in any civil or criminal proceedings . . . ."); *see also Howard v. Food Lion, Inc.*, 232 F. Supp. 2d 585, 598-99 (M.D.N.C. 2002) (dismissing a defamation claim based on a statement made to the ESC).

Next, to the extent that plaintiff contends that the presence of Ratliff, Flake, and Clodfelter at her termination hearing established the element of publication, the communications at the hearing are also privileged and cannot form the basis for plaintiff's defamation claim. A communication may be subject to qualified privilege where the communication is made in good faith; the communication is one in which the speaker has a legal interest, duty, or right; the statement is limited in scope for this purpose; and the

15

communication is made to one with a corresponding interest, duty, or right. *Kinesis Advertising, Inc. v. Hill*, 652 S.E.2d 284, 297 (N.C. App. 2007). To rebut the presumption of qualified privilege, the plaintiff must show actual malice. *Id*.

The record evidence shows that defendants communicated to plaintiff the reasons behind her termination during a meeting between plaintiff, defendant Ratliff (plaintiff's immediate supervisor), defendant Flake (human resources director), and defendant Clodfelter (supervisor for student affairs). Ratliff, Flake, and Clodfelter all participated in the decision to fire plaintiff, thus fulfilling the duties of their employment as agents of defendant SPCC. Plaintiff has failed to show that defendants made the statement at her termination hearing with actual malice. Therefore, plaintiff cannot bring a defamation claim based on statements made in her termination meeting. Furthermore, plaintiff cannot base her defamation claim on the placing of a statement regarding the cause for termination in her personnel file. *See Harrell v. City of Gastonia*, 392 Fed. App'x 197, 206-07 (4th Cir. 2010) (noting that under North Carolina law placing information in a personnel file does not constitute publication of that information).

Finally, the court notes that defendant has provided an absolute defense to plaintiff's defamation claim because the record evidence shows that the alleged defamatory statement is true. *See Holleman v. Aiken*, 668 S.E.2d 579, 587 (N.C. App. 2008) ("We first note that truth is a defense to a libel claim."). That is, the evidence clearly shows that plaintiff adjusted her financial aid account. (Ratliff Aff. ¶ 14; First Am. Compl. ¶ 45.) Indeed, plaintiff admitted that she adjusted her account in her own affidavit. (Pl.'s Aff. ¶ 18.)

Furthermore, at the hearing before the court on defendants' motion for summary judgment on August 17, 2011, plaintiff admitted that she adjusted her account.[3] Because plaintiff has admitted that the alleged defamatory statement was in fact true, defendants are entitled to summary judgment as to plaintiff's defamation claim.

V.      **Conclusion**

For the reasons stated herein, the court will grant defendants' motion for summary judgment [docket no. #25] and dismiss plaintiff's complaint with prejudice.

**IT IS SO ORDERED**.

Signed: August 30, 2011

Max O. Cogburn Jr.
United States District Judge

---

[3] Plaintiff contended in her response brief that she did not alter her financial aid account, but her own affidavit and her admission to the court in the summary judgment hearing belie her contention in her brief that she did not adjust her account.

17